IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CRITICAL SYSTEMS, LLC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ADDISON HVAC, LLC, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 24-cv-01003-LKG <br><br> Dated: February 21, 2025 |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

In this civil action, the Plaintiff, Critical Systems, LLC ("Critical Systems"), asserts product liability and negligence claims against the Defendant, Addison HVAC, LLC ("Addison"), arising from the Defendant's manufacturing and sale of a Model PROA084B1X4D Addison HVAC Roof Top Unit ("HVAC Unit"). *See generally* ECF No. 32. Addison has moved to dismiss this matter, pursuant to Fed. R. Civ. P. 12(b)(6). ECF Nos. 35 and 35-1. The motion is fully briefed. ECF Nos. 35, 35-1, 36 and 39. No hearing is necessary to resolve the motion. *See* L.R. 105.6 (D. Md. 2023). For the reasons that follow, the Court **GRANTS** the Defendant's motion to dismiss and (2) **DISMISSES** the amended complaint.

**II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

**A.    Factual Background**

In this civil action, Critical Systems asserts product liability and negligence claims against Defendant Addison arising from Addison's manufacturing and sale of an HVAC Unit. *See generally* ECF No. 32. In the amended complaint, Critical Systems asserts the following claims against Addison: (1) strict liability-manufacturing defect-product liability (Count I) and (2) negligent manufacture (Count II). *Id.* As relief, Critical Systems seeks to recover monetary

---

[1] The facts recited in this memorandum opinion are taken from the amended complaint. ECF No. 32. Unless otherwise stated, the facts are undisputed.

1

damages in the amount of $216,549.00, and attorney's fees and costs from Addison. *Id*. at Prayers for Relief.

## The Parties

The Plaintiff, Critical Systems, is a Maryland limited liability company with its principal place of business located in Rockville, Maryland. *Id*. at ¶ 1.

The Defendant, Addison, is a Delaware limited liability company with its principal place of business located in Orlando, Florida. *Id*. at ¶ 2.

## The HVAC Unit

As background, Critical Systems is an engineering services firm, which operates in Maryland, Washington, DC, and Virginia and engages as a representative and agent of national HVAC equipment manufacturers. *Id*. at ¶ 5. Addison is a manufacturer of HVAC equipment. *Id.* at ¶ 6.

On or about November 8, 2019, Critical Systems submitted a purchase order to Addison to purchase a Model PROA084B1X4D Addison HVAC Roof Top Unit. *Id*. at ¶ 7. Thereafter, the HVAC Unit was shipped to, and installed at, a project known as Brandywine Living at Potomac (the "Project"), which was a new assisted living facility located at 10800 Potomac Tennis Lane, Potomac, Montgomery County, Maryland. *Id*. at ¶ 8.

After the installation of the HVAC Unit by the HVAC Contractor, Anderson Mechanical Services, Inc. ("Anderson"), Critical Systems remained contractually responsible for programming the HVAC Unit, bringing the HVAC Unit online and for proper operation until such time as the project is completed and turned over to its owner. *Id*. at ¶¶ 9-10. And so, Anderson utilized Critical Systems as its HVAC equipment provider for the Project. *Id*. at ¶ 11. The general contractor for the Project, Donohoe Construction ("Donohoe"), also utilized Anderson as its HVAC contractor for the Project. *Id*. at ¶¶ 12-13.

On March 5, 2021, an explosion and fire involving the HVAC Unit occurred at the Project. *Id*. at ¶ 14. The cause of the explosion and fire was an improperly threaded pipe nipple into the Maxitrol modulating valve outlet of the HVAC Unit. *Id*. at ¶ 15. The damage caused as a result of the explosion and fire required that the HVAC Unit be replaced. *Id*. at ¶ 18

Critical Systems alleges that it incurred direct costs of approximately $46,380.00 associated with replacement of the HVAC Unit and associated repair work following the

explosion and fire. *Id*. at ¶ 19. Critical Systems also alleges that it was issued a "BackCharge" by Anderson, in the amount of $120,115.00, for the costs Anderson incurred as a result of the explosion and fire. *Id*. at ¶ 20. Lastly, Critical Systems alleges that it was issued a "BackCharge" by Donohoe, in the amount $50,126.00, for the costs incurred by Donohoe as a result of the explosion and fire. *Id*. at ¶ 21.

Critical Systems' Allegations

In the amended complaint, Critical Systems alleges that Addison had a "duty of care to exercise reasonable care to prevent product defects arising out of the manufacture of the HVAC Unit" and that Addison breached this duty in its manufacture of the HVAC Unit. *Id*. at ¶¶ 24-25. In this regard, Critical Systems alleges that "Addison was responsible for the incorrect assembly of the pipe nipple into the outlet of the Maxitrol modulating valve as a part of its manufacturing process of the HVAC Unit" and that "[t]he manufacturing defect made the HVAC Unit unreasonably dangerous." *Id*. at ¶¶ 26-27. And so, Critical Systems contends that, as a direct and proximate cause of Addison's manufacturing defect, an explosion and fire occurred at the Project, resulting in Critical Systems sustaining damages. *Id*. at ¶¶ 29-30.

Critical Systems also alleges that "Addison was negligent in its assembly of the pipe nipple into the outlet of the Maxitrol modulating valve as part of its manufacturing process of the HVAC Unit." *Id*. at ¶ 36. In addition. Critical Systems alleges that, "as a direct and proximate cause of Addison's manufacturing negligence, an explosion and fire occurred [at the Project]" and Critical sustained damages. *Id*. at ¶¶ 39-40. And so, Critical Systems seeks to recover monetary damages from Anderson in the amount of $216,549.00. *Id*. at Prayers for Relief.

**B.    Procedural History**

Critical Systems commenced this civil action on February 28, 2024, in the Circuit Court for Montgomery County, Maryland. ECF No. 1-1. On April 5, 2024, Addison timely removed the matter to this Court. ECF No. 1.

On June 20, 2024, Critical Systems amended the complaint by leave of the Court. ECF Nos. 30 and 32. On July 30, 2024, Addison filed a motion to dismiss the amended complaint,

3

pursuant to Fed. R. Civ. P. 12(b)(6), and a memorandum in support thereof. ECF Nos. 35 and 35-1.

Critical Systems filed a response in opposition to Addison's motion on August 13, 2024. ECF No. 36. Addison filed a reply brief on August 27, 2024. ECF No. 39.

Addison's motion to dismiss having been fully briefed, the Court resolves the pending motion.

### III. LEGAL STANDARDS

#### A. Fed. R. Civ. P. 8 And 12(b)(6)

Under Fed. R. Civ. P. 8(a), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When evaluating the sufficiency of a plaintiff's claims under Fed. R. Civ. P. 12(b)(6), the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE inv. Priv. Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).

#### B. Product Liability Claims

To prevail on a product liability claim in Maryland, a plaintiff must show that: "(1) the plaintiff was the user or consumer of an alleged defective product; (2) the defendant was the seller of the product and at the time of sale was engaged in the business of selling such a product;

4

(3) at the time of sale the product was defective; (4) the product reached the plaintiff without substantial change in the condition in which it was sold; (5) the defect made the product unreasonably dangerous to the plaintiff; and (6) the defect proximately caused plaintiff's injuries." *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 802 (D. Md. 2013) (citing *Phipps v. General Motors Corp.*, 363 A.2d 955, 959 (Md. 1976)); *see also* Restatement (Second) of Torts § 402A (1965). A defect may come from "the design of the product, a deficiency in its manufacture, or from the absence or inadequacy of instructions or warnings as to its safe and appropriate use." *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 407 (D. Md. 2001) (citing *Simpson v. Standard Container Co.*, 527 A.2d 1337, 1339-40 (Md. Ct. Spec. App. 1987), *cert. denied*, 311 Md. 286 (1987)). The elements remain the same "whether the claim [is] characterized as one for strict liability or negligence." *Id.* (quoting *Watson v. Sunbeam Corp.*, 816 F. Supp. 384, 387 n.3 (D. Md. 1993) (internal citations omitted)).

Relevant to the pending motion to dismiss, Maryland courts have not directly addressed the question of whether a vendor who purchases a product for resale qualifies as a "user or consumer," but other courts have held that that intermediaries do not qualify as a "user or consumer." *See, e.g.*, *Johnson v. Centrome, Inc.*, No. 20-165, 2023 WL 5507716, at *7 (N.D. Ind. Aug. 23, 2023) ("user or consumer" language in Indiana Product Liability Act, which codified § 402A, "does not 'include one who merely acquires and resells' a defective product") (quoting *Estate of Shebel v. Yaskawa Elec. Am., Inc.*, 713 N.E.2d 275, 278 (Ind. 1999)); *Thiele v. Faygo Beverage, Inc.*, 489 N.E.2d 562, 588 (Ind. Ct. App. 1986) ("'[U]ser or consumer' means 'consuming entity' and does not include wholesalers, retailers or any other intermediary in the chain of distribution."); *Whittaker v. Fed. Cartridge Corp.*, 466 N.E.2d 480, 482 (Ind. Ct. App. 1984) ("It is clear that the authors of § 402A did not contemplate intermediate dealers to be within the scope of the definition of 'user or consumer.'"); *Johnson v. Zimmer Spine, Inc.*, No. 8-672, 2008 WL 11449246, at *3 (D. Nev. Aug. 8, 2008) (distinguishing the "ultimate consumer" from the seller or supplier of a product); *see also D'Antonio v. FMC Techs., Inc.*, No. 16-7032016 WL 7324151, at *2 (W.D. Pa. Sept. 30, 2016) ("Mr. D'Antonio was loading the product onto a truck to be transported to its ultimate buyer—a customer in the oil and gas industry, which would then put it to its intended use in the oil or gas extraction process. In this Court's view, that removed him from the scope of § 402A's definition of 'ultimate user or consumer.'"); *accord Boatel Indus., Inc. v. Hester*, 550 A.2d 389, 399 (Md. Ct. Spec. App. 1988)

5

(boat purchased from franchisor was not a "consumer good" under the Maryland Consumer Protection Act, where plaintiff purchased the boat for his sales agent to use as a demonstrator and not for personal use).

### C. The Economic Loss Rule

In product liability cases, Maryland courts categorize losses as either: "(1) personal injuries; (2) physical harm to property other than the product itself; or (3) economic loss suffered when the product fails to meet the contractual expectations of the purchaser." *Bryant v. Koppers, Inc.*, 627 F. Supp. 3d 466, 476 (D. Md. 2022) (quoting *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 631 (Md. 1995)). The economic loss rule generally prohibits a plaintiff from recovering purely economic losses. *See U.S. Gypsum Co. v. Mayor & City Council of Balt.*, 647 A.2d 405, 410 (Md. 1994). Such losses "are often the result of some breach of contract and ordinarily should be recovered in contract actions." *Morris*, 667 A.2d at 631. And so, a plaintiff in a product liability action cannot recover tort damages for "the loss of value or use of the product itself, and the cost to repair or replace the product." *U.S. Gypsum*, 647 A.2d at 410; *see also A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 634 A.2d 1330, 1336 (Md. 1994) (explaining that "strict liability in tort is applicable to physical injury to the plaintiff's property, as well as to personal injury," but not to economic losses).

Lastly, while the economic loss rule generally prohibits tort claims for purely economic losses, such losses "coupled with a *serious* risk of death or personal injury resulting from a dangerous condition" may be recovered in tort. *Morris*, 667 A.2d at 632; *see also Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 266 (Md. 2007) (holding that to assert a products liability theory, an action premised on economic loss alone must "allege facts that demonstrate that the product at issue creates a *dangerous condition*, one that gives rise to *a clear danger of death or personal injury*.").

### IV. ANALYSIS

Addison has moved to dismiss the amended complaint, pursuant to Fed R. Civ. P. 12(b)(6), upon the following two grounds: (1) Critical Systems cannot bring a strict product liability claim in this case, because it was not the ultimate user or consumer of the HVAC Unit at issue and (2) the economic loss rule bars Critical Systems' claims. ECF No. 35-1 at 5-18. And so, Addison requests that the Court dismiss the amended complaint. *Id.* at 18.

Critical Systems counters that the Court should not dismiss this matter, because it may bring a strict product liability claim under Maryland law as a user or consumer of the HVAC Unit. ECF No. 36 at 4. In addition, Critical Systems argues that the economic loss rule does not bar its product liability and negligence claims. *Id.* at 9. And so, Critical Systems requests that the Court deny Addison's motion. *Id.* at 12.

For the reasons set forth below, a careful reading of the amended complaint shows that Critical Systems' claims are barred by the economic loss rule. And so, the Court (1) **GRANTS** the Defendant's motion to dismiss and (2) **DISMISSES** the amended complaint.

### A. Critical Systems' Claims Are Barred By The Economic Loss Rule

As an initial matter, Addison argues persuasively that Critical Systems' claims in this case are barred by the economic loss rule. In product liability cases, Maryland courts categorize losses as either: "(1) personal injuries; (2) physical harm to property other than the product itself; or (3) economic loss suffered when the product fails to meet the contractual expectations of the purchaser." *Bryant v. Koppers, Inc.*, 627 F. Supp. 3d 466, 476 (D. Md. 2022) (quoting *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 631 (Md.1995)). In this regard, Maryland courts have traditionally viewed the "loss of value or use of the product itself, and the cost to repair or replace the product" as economic losses. *U.S. Gypsum Co. v. Mayor & City Council of Balt.*, 647 A.2d 405, 410 (Md. 1994); *see also A.J. Decoster Co. v. Westinghouse*, 634 A.2d 1330, 1332 n.2 (Md. 1994) ("In commercial cases, most courts have refused to allow tort recovery for damage to the product itself, considering such damage solely economic loss."). Given this, Maryland courts have held that the economic loss rule generally prohibits a plaintiff from recovering purely economic losses in tort. *U.S. Gypsum*, 647 A.2d at 410. And so, such losses "are often the result of some breach of contract and ordinarily should be recovered in contract actions." *Morris*, 667 A.2d at 631.

In this case, Critical Systems alleges in the amended complaint that it seeks to recover costs associated with replacing the allegedly defective HVAC Unit. ECF No. 32-1 at Prayers for Relief. As Addison correctly observes, a claim to recover the cost to repair or replace the HVAC Unit is most naturally understood as a warranty claim, and this claim involves a purely economic loss. ECF No. 35-1 at 12-13; *see also U.S. Gypsum*, 647 A.2d at 410; *East River S.S. Corp. v. Transam. Delaval Inc.*, 476 U.S. 858, 868 (1986) (explaining that "the failure of the product to

function properly—is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain").

Given this, the replacement costs that Critical Systems seeks to recover here are most appropriately recovered in a contract action and are, thus, barred from recovery in tort by the economic loss rule. *See U.S. Gypsum*, 647 A.2d at 410. And so, the Court must dismiss Critical Systems' claim seeking to recover the costs associated with the replacement of the HVAC Unit.

The economic loss rule also bars Critical Systems' claims seeking to recover the costs of certain "BackCharges" for costs incurred by Anderson and Donohoe as a result of the fire and explosion at the Project. In this regard, comment c to Section 402A of the Restatement (Second) of Torts provides that:

> On whatever theory, the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

Restatement (Second) of Torts § 402A cmt. c (1965). Maryland courts have held that Section 402A extends liability to "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property" and "for physical harm thereby caused to the ultimate user or consumer or his property." *A.J. Decoster*, 634 A.2d at 1336. Given this, the economic loss rule generally bars recovery in tort for losses arising out of the damage to the person or property of a third party. *See, e.g.*, *Raspberry Junction Holding, LLC v. Se. Conn. Water Auth.*, 263 A.3d 796, 811 (Conn. 2021) ("[T]he vast majority of jurisdictions bar recovery of economic losses in a negligence action arising out of damage to the person or property of another.").[2]

---

[2] Critical Systems correctly observes that the economic loss rule does not bar recovery in tort for physical harm to property other than the defective product itself. ECF No. 36 at 9; *see also Pac. Indem. Co. v.*

8

Here, the amended complaint makes clear that Critical System seeks to recover "BackCharges" for damages to the property of a third party. Notably, the factual allegations in the amended complaint make clear that Critical Systems neither owned the Project, nor the property located at the Project. *See* ECF No. 32 ¶ 9; ECF No. 35-1 at 16. Given this, Critical Systems' claims to recover the costs of "Back Charges" issued by Anderson and Donohue are also barred by the economic loss rule. *See e.g., Wausau Tile, Inc. v. Cnty. Concrete Corp.*, 593 N.W.2d 445, 454 (Wis. 1999) (holding plaintiffs' liabilities to third parties arising from product defects are "consequential economic loss[es]" not recoverable in tort); *Marsulex Envtl. Techs. v. Selip S.P.A.*, 247 F. Supp. 3d 504, 519 (M.D. Pa. 2017) (holding the economic loss rule barred a product liability claim brought by a piping vendor against the manufacturer of defective piping to recover the cost of remediating property damage sustained by the vendor's customer).[3]

For each of the above reasons, the Court: (1) **GRANTS** the Defendant's motion to dismiss for this reason and (2) **DISMISSES** the amended complaint.[4] Fed. R. Civ. P. 12(b)(6).

## V.    CONCLUSION

In sum, a careful reading of the amended complaint shows that Critical System's claims are barred by the economic loss doctrine. And so, the Court:

(1) **GRANTS** the Defendant's motion to dismiss; and

---

*Whaley*, 572 F. Supp. 2d 626, 628 (D. Md. 2008) (citing *A.J. Decoster*, 634 A.2d at 1332). But Critical Systems' recovery is barred here because it seeks to recover for an injury caused to the property of a third party. *See, e.g.*, *Am. Eagle Ins. Co. v. United Techs. Corp.*, 48 F.3d 142, 145 (5th Cir. 1995).

[3] Critical Systems' argument that the "dangerous conditions" exception to the economic loss rule permits it to bring the claims asserted in this case is also unconvincing. ECF No. 36 at 12. This exception cannot apply here, because the amended complaint makes clear that there is no imminent risk of death or bodily injury. ECF No. 32 ¶¶ 18-19; *see also Morris*, 667 A.2d at 632 (While the economic loss rule precludes tort claims for purely economic losses, such losses "coupled with a *serious* risk of death or personal injury resulting from a dangerous condition" may recover in tort.). Notably, the amended complaint makes clear that any risk of death or personal injury from the defective HVAC Unit was eliminated when Critical Systems removed and replaced the HVAC Unit. ECF No. 32 ¶¶ 18-19.

[4] The Court construes Addison's argument that Critical Systems "lack standing" to bring its claims, to raise the issue of whether Critical Systems was the "user and consumer" of the HVAC Unit. ECF No. 35-1 at 5-10. Because the Court has determined that the economic loss rules bars Critical Systems' claims in this case, the Court does not reach this issue.

      (2) **DISMISSES** the amended complaint.

A separate Order shall issue.

**IT IS SO ORDERED.**

                                                     s/Lydia Kay Griggsby
                                                     LYDIA KAY GRIGGSBY
                                                     United States District Judge